UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| TRINA JO WILLS, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:18-CV-935 JD ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Trina Wills filed a complaint seeking review of the final decision of the Commissioner of Social Security denying her application for social security disability benefits. [DE 1]. The matter is fully briefed and ripe for decision. [DEs 15-18]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

## I. FACTS

Wills first filed applications for disability insurance benefits and supplemental security income on January 27, 2014. Her claims were denied initially and upon reconsideration. On January 19, 2016, the first ALJ who reviewed Wills' case issued a decision denying her disability benefits and concluded that Wills was not disabled under the Social Security Act because she was able to perform other work in the economy. On February 8, 2016, Wills again applied for disability benefits this time alleging that her disability began on January 15, 2016. Her claims were denied initially and upon reconsideration.

Wills contends that she is unable to work primarily because she suffers from left shoulder pain, degenerative joint disease in her left knee following an ACL tear and repair, degenerative disc disease of the lumbar spine and S3 fracture, left elbow dislocation, migraine headaches,

1

asthma, chronic obstructive pulmonary disease, emphysema, depression, anxiety, attention deficit hyperactive disorder, problems with her right eye, and loss of vision in her left eye due to glaucoma and cataracts. Wills stated that her vision problems have ruined her life, that vision and gait issues have caused her to fall five times as of February 2016, and that her depth perception issues caused her to fall more recently.[1] In fact, many of her current ailments are the result of these previous and more recent falls.

The record shows that Wills has a long history of problems with her left eye and she has undergone numerous surgical procedures to correct them—none of which were successful. (R. 90).[2] As of January 2014, the best corrected visual acuity in her left eye was 20/200 and therefore she is permanently legally blind in that eye. *Id*. At several points throughout the record, Wills states that she is having problems with her right eye despite several exams demonstrating her to have 20/20 vision in it.[3] In the Disability Report from February 23, 2016, her interviewer observed that "she is blind in [her] left eye and having problems with her R[ight] eye." (R. 278). In the Medical Conditions section of the Disability Report, Wills listed problems with her right eye as one of six conditions that limit her ability to work. (R. 281). On March 3, 2016, Wills had an appointment with her ophthalmologist, Bruce H. Schwartz MD, where she stated that her right eye had been bothering her and she felt like her vision was going bad. (R. 583). She also noted that her glasses were not helping her or did not seem strong enough and that she was seeing starbursts from headlights while driving, even during the day. *Id*. The ophthalmologist recorded the current problem in that appointment to be gradual decreasing vision in her right eye. *Id*.

---

[1] Medical Facts Summary [DE 15-1] at 2 ("She reported that in the past two years she had fallen five times due to vision and gait issues."); R. 64, 94, 372, 434.
[2] The surgeries on her left eye include: a trabeculectomy in October 2013, phacoemulsification with IOL in April 2015, and YAG capsulotomy in July 2015. (R. 90).
[3] R. 47, 62, 92, 96. Her visual fields and pressure are normal in her right eye and her best corrected visual acuity in her right eye was 20/25 in January 2014, $20/25^{+2}$ in April 2015, $20/40^{-1}$ in August 2015, and 20/20 in August 2015, while her uncorrected visual acuity in her right eye was 20/40 in September 2015. (R. 96).

On April 12, 2016, at the request of the Social Security Administration, Wills attended a consultative exam performed by R. Gupta MD in which he noted that Wills had no sight out of her left eye and that she had an antalgic gait.[4] (R. 597). Less than two weeks later, Wills went to the emergency room after falling while trying to get down from standing on a kitchen chair. Wills stated that when she was stepping down from the chair, she misjudged the distance to the floor and fell. (R. 608). X-rays suggested a sacral fracture and a CT examination in May 2016 showed a suspected fracture at S3 with degenerative changes most pronounced in L5-S1. (R. 24). She also noted to the ER doctor that she has chronic balance problems. (R. 608).

On June 4, 2016, Wills went to the emergency room a second time after falling down the stairs. She stated that she injured her left arm, left knee, and hit her head in the fall. (R. 642). Wills reported that she fell "as a result of a miss-step due to 'blind spots' in her vision." *Id*. She was diagnosed with an open left elbow dislocation and was admitted for surgical reduction and repair of the medial collateral ligament. (R. 24, Ex. B12F1-8). Wills had been drinking that evening, but she told the ALJ in the hearing that she did not believe alcohol to be a factor in the fall. (R. 67). According to laboratory results from that evening, Wills' blood alcohol level was 134 mg/dL. (R. 645). Two weeks after completing the surgery on her left arm, Wills again returned to the hospital after slipping and falling in a kiddie pool filled with river water, which resulted in her arm cast getting wet. (R. 795).

On November 9, 2017, at her hearing before the ALJ, Wills testified that the recurring issues with her eyes caused her to have depth perception and balancing problems, which resulted in her not being steady on her feet and running into walls a lot. (R. 41). In fact, Wills' history with injuries resulting from falls goes back to December 2013, when she tripped over a pallet at

---

[4] An antalgic gait develops as a way to avoid pain while walking.

work and injured her left knee. (R. 50-51). She testified that, at the time, she was working for a manufacturing company and she tripped over a pallet. (R. 50). She told the ALJ that she fell the day before her 50th birthday "and then they fired me and ever since it's been one problem after another." (R. 49). An MRI completed in June 2014 showed a complete tear of her ACL and a lateral meniscus tear in her left knee. (R. 90). It was not until August of 2014 that Wills underwent surgery to repair her ACL tear and remove her torn meniscus. *Id*. Wills reported that following the surgery her left leg never regained its full mobility. (R. 23, Ex. B8f).

During the hearing, the ALJ noted the multiple falls in Wills' record and asked whether it was due to her depth perception issues and Wills confirmed that it was. (R. 64). Wills stated that she normally wears bifocal glasses, but that they were broken in one of the falls and her insurance would not cover another pair for five years. (R. 46). She testified that she stopped driving six months prior to the hearing because she was scared following an incident where she drove into her neighbor's yard while turning left onto her driveway. *Id*. Wills also explained to the ALJ that her right eye gets tired from over-compensating for her blind left eye, how she has light sensitivity problems in her right eye, and she is unable to read due to her vision issues. (R. 62, 65).

A vocational expert ("VE") testified during the hearing and his testimony was based strictly on the hypothetical posed to him, which offered an assigned residual functional capacity ("RFC")[5] of light work with normal breaks and additional exertional and environmental limitations. The hypothetical individual had no left eye vision but could avoid hazards in the workplace such as doors ajar, boxes on the floor, and the individual could read 12 point font or greater. (R. 73). Per the VE, that individual would be able to perform representative work such as

---

[5] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

a garment sorter, an office helper, or merchandise marker. (R. 74). Wills' attorney then asked the VE if such an individual was limited to only an occasional near acuity whether those three jobs would be eliminated and the VE confirmed that to be true. (R. 76). The VE also indicated that there would not be any other types of light jobs that could be done by the hypothetical individual with only an occasional near acuity. *Id*.

The ALJ issued a decision on March 29, 2018, denying Wills disability benefits and concluding that Wills was not disabled under the Social Security Act because she was able to perform other work in the economy. On September 28, 2018 the Appeals Council then denied Wills' request for review which made the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Wills seeks review of the Commissioner's decision, invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v.*

5

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability and supplemental insurance benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Wills argues that remand is required because first, the ALJ erred in failing to adequately account for her moderate limitations in concentration, persistence, and pace in the RFC. Second, she argues that the ALJ erred in evaluating Wills' vision-related limitations and in declining to include further limitations regarding decreased depth perception in the RFC. And third, she argues that the ALJ erred in failing to include limitations of handling, fingering, or feeling of the left hand in the RFC. The Court need only address the second argument, as the Court agrees that remand is required for that reason. While the ALJ acknowledged Wills' vision problems and adopted some limitations in that respect, she failed to address other evidence in the record that could have supported further limitations. The decision also offered no explanation for the vision-related limitations that the ALJ did adopt, meaning the decision also failed to draw a logical bridge between the evidence and her findings.

7

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski*, 245 F.3d at 888. Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

The ALJ in this case concluded that Wills had the RFC to perform light work except that she can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The ALJ found Wills could occasionally balance, stoop, kneel, crouch and crawl. The ALJ also found that while Wills has no left eye vision, she can avoid hazards in the workplace such as doors ajar and boxes on the floor, and she can read 12 point font or greater.

Despite the large number of references to Wills' vision problems, balancing issues, and her resulting falls, when determining Wills' RFC, the ALJ ignored or misstated this line of evidence that could have supported more restrictive limitations. For Wills' RFC determination, the ALJ found that she "can avoid hazards in the workplace such as doors ajar and boxes on the floor" (R. at 21) even though one of Wills' more significant injuries (the ACL tear of her left

8

knee) was precipitated by tripping over a pallet at work. (R. 50-51). The ALJ found that Wills could avoid boxes on the floor, but the record indicated that Wills failed to see a much larger object—a pallet—on the ground and fell and hurt herself as a result. The ALJ never acknowledged that fall or its cause, despite acknowledging the injury. (R. 23). That fall occurred in 2013, but the record demonstrates that Wills continued to fall due to her problems with vision, depth perception, and balance, so that fall was still probative of her limitations within the period of her disability claim. In addition to her numerous falls, Wills also testified that she runs into walls a lot, which is inconsistent with an ability to avoid hazards like doors ajar, but similarly the ALJ never acknowledged that testimony either. (R. 41).

The ALJ also noted that Wills had "not required emergency room visits or hospitalization for her physical impairments other than on one occasion when she fell. . . ." (R. 26). In fact, the record indicates that Wills went to the emergency room twice as a result of two falls due to what Wills testified as being her problems with balance and depth perception. (R. 608, 642). So, while Wills did not go to the emergency room as a result of pain in her knee, shoulder, spine, or arm, she did go to the emergency room as result of injuries caused by problems with her vision. The ALJ focused on Wills' knee, shoulder, and back impairments, but overlooked the impairments related to her vision, which were leading her to fall and further injure herself.

Several of her medical records and disability records indicate that Wills continually raised issues she was having with her right eye and how she was suffering from balance and depth perception problems as a result of it. (R. 372, 388, 433). Wills also indicated that she kept falling—the record includes references to at least eight falls, five mentioned by Wills and three that occurred since February 2016. (R. 64). The ALJ addressed two of the falls: one where alcohol was involved in her fall down the stairs and another where water was involved in her fall

9

in a kiddie pool, which suggests the ALJ believed the falls could be attributed to those reasons, when the record points to a more pervasive problem. The numerous falling incidents tend to show Wills' continued difficulty with balance and depth perception that have not improved over time, but the ALJ's decision minimized and failed to confront that pattern of evidence.

Moreover, despite including some vision-related limitations in the RFC, the ALJ never explained why she adopted those limitations and thus the ALJ's decision fails to draw a logical bridge between the evidence in the record and the final limitation. The RFC itself includes some vision-related limitations, noting that Wills has no left eye vision and that she should avoid wet, slippery, or uneven surfaces, unprotected heights, commercial driving, and unguarded moving machinery, but states that she can still avoid workplace hazards. The only place the ALJ's decision mentions those limitations, though, is in the RFC itself; the decision never explains why those limitations are warranted or why greater limitations are not. Moreover, the ALJ gave reduced weight to the reviewing physicians who included no "limitations caused by [Wills'] monocular vision" because their opinions did not account for those limitations, but again, the ALJ did not explain what those vision limitations were. (R. 27). The resulting limitations are not self-apparent, either; as already discussed, there is at least some evidence that Wills would have difficulty avoiding even normal workplace hazards. Given the lack of explanation for why the ALJ adopted the vision limitations in the RFC, the Court cannot find that the ALJ drew a logical bridge in that regard. Thus, the ALJ has not sufficiently "connected the dots between [Wills'] impairments, supported by substantial evidence in the record, and the RFC findings." *Young*, 362 F.3d at 1002. Therefore, a remand is also warranted for that related reason.

Finally, on step five in determining whether Wills can perform other work in the community, the ALJ posed a hypothetical to the VE that only included the limitations of "no left

eye vision but she can avoid hazards to the workplace such as doors ajar, box on the floor, and she can read 12 point font or greater." (R. 73). As a result of these limitations, the VE found that Wills could only perform the required work for three representative occupations: garment sorter, office helper, or merchandize marker. (R. 74). When Wills' attorney requested that the limitation requirement of near visual acuity be added to the hypothetical, the VE found that there would not be any other jobs that Wills could perform. (R. 76). The exchange between the VE and Wills' attorney is informative because it demonstrates that Wills' vision strength, which has continued to be a problem for her in recent years, is a limiting factor in whether there is any work in the community that she can perform.

In sum, the ALJ's exclusion of this line of significant evidence supporting Wills' claim for disability fails to demonstrate that the ALJ considered the full extent of Wills' vision issues and its limiting effects. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering a decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See id.* Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Because the ALJ's assessment of Wills' RFC is not supported by substantial evidence or an adequate discussion of the actual evidence, the determination cannot stand. 42 U.S.C. § 405(g); SSR 96–8p.

## V. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

11

SO ORDERED.

ENTERED: December 9, 2019

                                              /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court